UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X
                                                    :
JOB VIGUERAS HERRERA,                               :      03 CV 5243 (ARR)(MDG)
                                                    :
                        Plaintiff,                  :      NOT FOR
                                                    :      PUBLICATION
        -against-                                   :
                                                    :      OPINION AND ORDER
ANGELO SEGRETTI and NISSAN INFINITI,                :
                                                    :
                        Defendants.                 :
                                                    :
------------------------------------------------------------------- X
ROSS, United States District Judge:

      Plaintiff Job Vigueras Herrera commenced this personal injury action on October 17, 2003, alleging that defendant Angelo Segretti, driving an automobile with the consent of the automobile's owner, defendant Nissan Infiniti, negligently caused an accident resulting in injuries to plaintiff. Defendant Segretti now moves for summary judgment, claiming that the plaintiff has not sufficiently alleged a "serious injury" as required by Section 5102 of New York State Insurance Law. For the reasons set forth below, the defendant's motion is granted in part and denied in part.

## BACKGROUND

      For the purposes of this summary judgment motion, the parties do not contest the basic facts surrounding this case. On September 23, 2002, between 9:00 and 9:30am, the parties were involved in a motor vehicle accident at the intersection of Glenn Street and Gulf Avenue in Staten Island, New York. Following the accident, Herrera exited his car unassisted. Herrera Dep. 33. He received no medical attention at the scene and was not taken to a hospital. Id. 36. Later that day, Herrera sought treatment from a chiropractor, Anne

1

Fitzpatrick, complaining of pain in his neck and back.  Id. 39; Def. Ex. G at 1-2.  By report dated July 7, 2003, Dr. Fitzpatrick diagnosed plaintiff with brachial neuritis radiculitis, chronic traumatic cervico-cranal syndrome with associated occipito-trigeminal cephalgia, traumatic insult to the soft tissues in the neck and immediate cervical paravertebral musculature, and a subluxation complex of the cervical region with radiating pain to the skull via the cervical plexus.  Further, she lists the radiologist's findings of herniations at C3/C4, L4/L5, L5/S1, and L3/L4.  Treatment as of July 7, 2003, was of a conservative nature, consisting of mild spinal manipulation and physiotherapy.  In her opinion, with a reasonable degree of chiropractic certainty, plaintiff suffered a permanent injury to his cervical and lumbar spine.

Plaintiff also presented to Y. Fill Slukhinsky, M.D., on September 24, 2002 and November 5, 2002.  Dr. Slukhinsky's initial diagnoses were: head concussion with post-conclussive temporal headaches, cervical spine sprain, and lumbosacral spine derangement.  See Def. Ex. I at 2.  After a review of MRI reports and a follow-up examination, Dr. Slukhinsky diagnosed severe cervical spine derangement, post-traumatc herniated disc at C3-4, post traumatic radiculopathy at C5-6 on the left side, and lumbosacral spine sprain with post-traumatic fibromyalgia.

On November 12, 2004, Dr. Michael J. Katz, M.D., performed an independent medical examination of plaintiff on behalf of defendant Angelo Segretti.  See Def. Ex. J.  Upon examination of the cervical spine, he found full flexion, full extension, and full rotation on both sides.  Upon examination of the lumbosacral spine, Dr. Katz found full flexion, full extension, and full side-to-side bending.  Dr. Katz diagnosed plaintiff with resolved cervical and lumbosacral strains.  Dr. Katz further commented that plaintiff showed no signs or

2

symptoms of an ongoing disability, was not disabled on a causally related basis, showed no permanent changes, was capable of gainful employment, and was capable of performing all activities of daily living.

Dr. Burton S. Diamond, M.D., performed an independent neurological examination on Mr. Herrera on September 14, 2004. See Def. Ex. K. Dr. Burton diagnosed plaintiff with resolved cervical and lumbar strains, and found no evidence of neurological disability for his activities or occupation. It was Dr. Diamond's opinion that, from a neurological perspective, Mr. Herrera was "capable of working on a full-time basis and performing his normal activities of daily living." Id.

Stephen W. Lastig, M.D., reviewed the three MRI studies of the plaintiff. See Def. Ex. L. With respect to the lumbar spine, Dr. Lastig opined that the disc pathology at L3-L4 and L5-S1 was "most likely degenerative in origin and therefore unrelated to the accident of 9/23/02." Id. Further, he indicated that "it is not uncommon for asymptomatic individuals to demonstrate annular bulges and/or protrusions in the lumbar spine." Id. Dr. Lastig's review of the cervical spine study revealed straightening and "multilevel degenerative disc disease and degenerative spondylosis." Id. He noted a focal midline disc herniation at C3-C4 with cord impingement, posterior spondylitic changes at C5-C6, and no foraminal stenosis. Id. Dr. Lastig stated that "[t]he precise etiology of the midline disc herniation at C3-C4 cannot be determined on the basis of this single imaging study." Id. He explained that the straightening of the cervical spine is a non-specific finding, and, while it may be due to muscle spasm, it may instead be related to how the patient is positioned in the MRI unit during the examination. Id.

Dr. Fitzpatrick, plaintiff's treating chiropractor, re-examined plaintiff on April 1, 2005. At this time, Dr. Fitzpatrick found that plaintiff's range of motion in both his cervical and lumbar spines was greatly reduced. Specifically, she reported limitation of 30% in flexion, 33% limitation in extension, 56% limitation in left lateral flexion, 44% limitation in right lateral flexion, 25% limitation in left rotation, and 12% limitation in right rotation. With respect to plaintiff's lumbar spine, Dr. Fitzpatrick found 33% limitation in flexion, 40% limitation in extension, 60% limitation in left lateral flexion, 40% limitation in right lateral flexion, 66% limitation in left rotation, and 50% limitation in right rotation. Dr. Fitzpatrick opined that the injuries suffered in the September 2002 motor vehicle accident "cause pain which significantly restrict plaintiff's ability to perform the following without limitation: walking, standing, sitting, twisting, lifting oneself up and other similar activities." Fitzpatrick Aff. at 6-7. She reported that "prognosis for a full recovery is poor." Id. at 7.

Plaintiff was deposed on July 14, 2004. At his deposition, plaintiff testified that he attended therapy daily for about a month, and then three times per week for four to five months, all at the office of Anne Fitzpatrick. Herrera Dep. at 45. After approximately six months, plaintiff ceased treatment because he did not "have means to go." Id. at 47. When asked to clarify this response, plaintiff stated that he did not have transportation to his doctor's office.[1] Id. at 47.

Plaintiff quit working as a result of the accident, but admitted that no health care provider ever told him that he could no longer work. Id. Plaintiff did not work again until

---

[1]In his affidavit, plaintiff states that he stopped attending therapy because he did not have the money to pay for it.

4

March or April 2004, at which time he began doing landscaping work. Id. at 46. Plaintiff testified that there is nothing that he currently cannot do now that he could do before the accident, stating only that his back hurts when lifting heavy objects. Id. at 48. Plaintiff also testified that he played no sports before the accident and had no hobbies that required physical activity, other than helping friends clean their cars. Id. at 48-49.[2]

## DISCUSSION

A. Standard of Review for Summary Judgment

Under Rule 56, summary judgment is proper if the pleadings, depositions, answers, interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. Proc.56(c). An issue of fact is genuine when "a reasonable jury could return a verdict for the nonmoving party," and facts are material to the outcome of the litigation if application of the relevant substantive law requires their determination. See Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). The moving party has the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." Celotex Corp. v. Cartrett, 477

---

[2]The court notes that plaintiff's affidavit conflicts with his deposition testimony. In his affidavit, plaintiff states that since the accident he has experienced "pain and limitation in movement in [his] back" which prevents him sitting for 3-4 minutes, bending, lifting, twisting, rising from a seated position, getting out of bed, coughing, sneezing, and having bowel movements. He affirms that he is prevented from standing for more than 20 minutes, sitting for more than 20 minutes, and walking for more than 20 minutes. Further, plaintiff alleges in his affidavit that prior to the accident he could run more than 59 minutes at a time and play sports. He states that he is precluded from traveling in a vehicle for more than one hour, but a page later states that he cannot drive for more than 20 minutes due, in part, to his inability to sit for any greater period.

U.S. 317, 323 (1986). The substantive law determines the facts that are material to the outcome of a particular litigation. See Anderson, 477 U.S. at 250; Heyman v. Commerce & Indus. Ins. Co., 524 F.2d 1317, 1320 (2d Cir. 1975). In determining whether summary judgment is appropriate, a court must resolve all ambiguities, and draw all reasonable inferences against the moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)).

If the moving party meets its burden, the burden then shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. Proc. 56(e). The non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson, 477 U.S. at 247-48. Only when it is apparent that no rational finder of fact "could find in favor of the non-moving party because the evidence to support its case is so slight" should summary judgment be granted. Gallo v. Prudential Residential Servs. Ltd. Partnership, 22 F.2d 1219, 1223 (2d Cir. 1994).

The only question on this summary judgment motion is whether Herrera has established a genuine issue as to whether he suffered a "serious injury" as defined in N.Y. Ins. Law § 5102(d). New York has a no-fault insurance scheme, which limits the causes of action available against insured motorists. Under the New York plan, losses are generally compensable only via insurance claims. A common law tort claim for non-economic injuries

6

is available only when the plaintiff has suffered a "serious injury." See N.Y. Ins. Law § 5104(a). Serious injury is defined as a personal injury which results in:

(1) "death;"
(2) "dismemberment;"
(3) "significant disfigurement;"
(4) "a fracture"
(5) "loss of a fetus"
(6) "permanent loss of use of a body organ, member, function or system;"
(7) "permanent consequential limitation of use of a body organ or member;"
(8) "significant limitation of use of a body function or system;" or
(9) "a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment."

N.Y. Ins. Law § 5102(d). The court must determine as a threshold question "whether the evidence would warrant a jury finding that the injury falls within the class of injuries that, under no-fault, should be excluded from judicial remedy." Licari v. Elliott, 57 N.Y.2d 230, 238, 441 N.E.2d 1088, 1092, 455 N.Y.S.2d 570, 574 (1982).

To prevail on summary judgment in this context, the defendant must initially establish a prima facie case that the plaintiff did not sustain a serious injury within the meaning of New York's No-Fault Insurance Law. Barth v. Harris, No. 00 Civ. 1658, 2001 WL 736802, at *2 (S.D.N.Y. June 25, 2001). To meet this burden, the defendant may rely on unsworn reports by plaintiff's physicians, see McGovern v. Walls, 201 A.D.2d 628-29 (2d Dep't 1994), but reports by defendant's own retained physicians must be in the form of sworn affidavits, see Marsh v. Wolfson, 186 A.D.2d 115, 115-16 (2d Dep't 1992). Once the defendant has established a prima facie case that the plaintiff has not suffered a "serious injury" within the meaning of the statute, the burden shifts to the plaintiff to come forward with sufficient evidence to support

his or her claim. Ebewo v. Martinez, 309 F.Supp.2d 600, 604 (S.D.N.Y. 2004) (citing Gaddy v. Eyler, 79 N.Y.2d 955 (1992)). Plaintiff must submit admissible evidence in the form of sworn affidavits or affirmations by physicians. Barth, 2001 WL 736802, at *2 (citing Bonsu v. Metro. Suburban Bus Auth., 202 A.D.2d 538 (2d Dep't 1994)). Additionally, the Court of Appeals has held that the statutory "serious injury" threshold requires objective proof of a plaintiff's injury; subjective complaints of pain alone will not suffice. Toure v. Avis Rent A Car Sys., Inc., 98 N.Y.2d 345, 350 (2002).

Herrera alleges that his injuries were serious under the sixth ("permanent loss of use"), seventh ("permanent consequential limitation"), eighth ("significant limitation"), and ninth ("90/180 limitation") statutory definitions. Segretti contends that a reasonable jury could not conclude that Herrera's injuries were serious under any definition.

B.      Permanent Loss of Use

In order to qualify as a "permanent loss of use of a body organ, member, function or system," the plaintiff must have suffered a total loss or limitation. Oberly v. Bangs Ambulance, Inc., 96 NY2d 295, 727 N.Y.S.2d 378, 751 N.E.2d 457 (2001). Plaintiff has offered no evidence of a total loss of use of his cervical spine or lumbar spine, and, accordingly, defendant's summary judgment motion on this point is granted.

C.      Permanent Consequential Limitation and Significant Limitation

"Whether a limitation of use or function is 'significant' or 'consequential' relates to medical significance and involves a comparative determination of the degree or qualitative nature of an injury based on the normal function, purpose and use of the body part." Dufel v. Green, 84 N.Y. 2d 795, 798 (1995). Thus, to establish a "serious injury" under either the

8

seventh or eight definition, plaintiff must submit medical evidence containing objective, quantitative evidence with respect to diminished range of motion or a qualitative assessment comparing plaintiff's present limitations to the normal function, purpose and use of the affected body organ, member, function, or system.

Plaintiff has done so here. Although defendant's submissions, indicating that plaintiff suffered only minor and short-term limitations as a result of the automobile accident, were sufficient to meet his initial burden, plaintiff's submissions in opposition raise material issues of fact as to whether he sustained a "serious injury." Plaintiff submitted an affidavit from his treating chiropractor specifying the decreased range of motion in his lumbar and cervical spines, along with evidence of disc herniations confirmed by MRI. Dr. Fitzpatrick asserted that plaintiff's injuries were permanent and causally related to the motor vehicle accident. This evidence is sufficient to raise a triable issue of fact. See Clervoix v. Edwards, 781 N.Y.S.2d 690 (2d Dept. 2004) (citing Toure, 98 N.Y.2d 345; Acosta v. Rubin, 2 A.D.3d 657 (2d Dept. 2003)).

Defendant's attacks on these submissions are without merit. Defendant faults Dr. Fitzpatrick's April 2005 tests for being "the same as those performed on the day of the accident," and "based upon subjective complaints of pain." Def. Reply Mem. at 2. That Dr. Fitzpatrick performed tests similar, or even identical, to those she performed upon initial consultation is of no consequence. Were Dr. Fitzpatrick's affidavit based solely on her 2002 examinations of plaintiff, it would be insufficient to defeat a motion for summary judgment. That is not the case, however, as Dr. Fitzpatrick examined plaintiff in January 2005. Nor is Dr. Fitzpatrick's opinion based on indicia that are insufficiently objective. See Sheer v. Koubek, 70 N.Y.2d 678, 679 (1987) (plaintiff's subjective pain, standing alone without objective indicia, cannot constitute a

9

significant limitation). Indeed, it is based on MRI results and her own examination showing significant limitations in plaintiff's range of motion.

Defendants urge, as well, that plaintiff has failed to adequately explain the two year gap between plaintiff's treatment and subsequent re-examination. As the New York Court of Appeals found recently in Pommells v. Perez, "the so-called gap in treatment" here "was, in reality, a cessation of all treatment." __ N.E.2d __, 2005 WL 975859 (April 18, 2005). Plaintiff ceased chiropractic treatment six months after the accident, seeking no other treatment until two years later when he visited Dr. Fitzpatrick in connection with this case. "[A] cessation of treatment is not dispositive," but plaintiff must offer a "reasonable explanation." Id.

In her affidavit, Dr. Fitzpatrick explained that plaintiff failed to pursue further treatment due to financial constraints and the denial of no-fault benefits. The court finds this explanation sufficient to defeat summary judgment. As courts have noted, "a plaintiff should be free to explain a gap in treatment based on impecuniousness." Panchmia v. Tauber, 3 Misc. 3d 849, 775 N.Y.S.2d 490, 494 (N.Y. Civ. Ct. 2004) (citing Rodriguez v. Oh, Index No. 2221 QTS 2001 (N.Y.C. Civ. Ct. Queens County July 1, 2002) (courts should be sensitive to the economic realities that force injured persons who need health care services to make the hard choice of suddenly terminating . . . treatment because they simply can no longer afford to do so)). The court notes that plaintiff testified at his deposition that he ceased treatment because he didn't "have means to go." Herrera Dep. at 47. Later, when asked to explain his answer, he testified that when he said "means" he meant he lacked transportation. Id. at 51. In his affidavit, in contrast, plaintiff states that he lacked the financial resources to continue treatment. Herrera Aff. at 2. Although there is some inconsistency, in light of the plaintiff's broad statement at

10

deposition that he didn't have "means to go," and Dr. Fitzpatrick's statement in her affidavit that plaintiff lacked financial means to pay for therapy, summary judgment is inappropriate.

Finally, defendants argue that Dr. Fitzpatrick failed to adequately show a causal nexus between the accident and plaintiff's injuries. Dr. Fitzpatrick's January 2005 findings of limited range of motion are consistent with her findings directly following the accident and the MRI test performed on October 25, 2001. Her opinion that the injuries were causally connected to the motor vehicle accident is therefore not without objective basis, and summary judgment is unwarranted.

After reviewing the record as a whole, and taking the evidence in the light most favorable to plaintiff, the non-moving party, this court finds that the medical testimony is sufficient to raise a triable question as to whether Mr. Herrera suffered a significant limitation or permanent consequential limitation as to his neck and back under § 5102(d)'s seventh and eighth definitions of serious injury.

   D.    80/190 Impairment

Plaintiff also alleges a "serious injury" because he suffered a medically determined injury that prevented him from performing substantially all of the material acts of his customary daily activities for at least 90 out of the first 180 days immediately following the injury. See D'Avolio v. Dictaphone Corp., 822 F.2d 5, 6 (2d Cir. 1987) (citing Stossel v. Fleyshmahker, 117 Misc.2d 454, 455, 458 N.Y.S.2d 484 (1983)). This threshold will not be satisfied if the evidence establishes only a "slight curtailment" of the plaintiff's usual activities. Short v. Shawn, 188 S.D.2d 815 (3d Dept. 1992). Moreover, the plaintiff is

11

required to present more than personal self-serving testimony as to the inability to perform his usual and customary activities. Cullum v. Washington, 227 A.D.2d 370 (2d Dept. 1996).

In her sworn affidavit, Dr. Fitzpatrick states that Mr. Herrera suffered "medical conditions causally related to the accident of September 23, 2002 which are permanent in nature and which prevented him from performing substantially all of the material acts which constitute hi[s] usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the accident." Fitzpatrick Aff. at 5. In addition, plaintiff did not continue to work following his accident, claiming he was in too much pain. Although defendant correctly points out that no doctor told plaintiff he was unable to work, a reasonable juror, should he credit the statements of Dr. Fitzpatrick and plaintiff, could find that plaintiff suffered a "serious injury" that prevented him from performing his customary daily activities for at least 90 out of the first 180 days immediately following the injury.

## CONCLUSION

For the reasons stated above, defendant's motion for summary judgment is granted in part and denied in part. No reasonable juror could conclude that plaintiff suffered a permanent loss of use of a body organ, member, function, or system. Plaintiff has sufficiently alleged a "serious injury," however, under the seventh, eighth, and ninth statutory definitions.

SO ORDERED.

                                                                        Allyne R. Ross
                                                                        United States District Judge

Dated: May 27, 2005
      Brooklyn, New York

SERVICE LIST:

    *Counsel for Plaintiff:*
    Borell & Riso, LLP
    1500 Hylan Boulevard
    Staten Island, NY 10305

    *Counsel for Defendant Segretti:*
    Robert P. Sweeney
    Desena & Sweeney, LLP
    1383 Veterans Memorial Highway
    Hauppauge, NY 11788

    *Counsel for Defendant Nissan Infiniti:*
    Clifford B. Aaron
    London Fischer LLP
    59 Maiden Lane
    New York, NY 10038


cc:        Magistrate Judge Go